# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00556-CV

**Nathanael Brown, Appellant**

**v.**

**Jessica Freed and Samuel Freed, Appellees**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-19-009322, THE HONORABLE TODD WONG, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Jessica Freed and Samuel Freed sued their former landlords, Marc and Karen Greenberg, alleging that they had acted in bad faith in withholding a portion of their security deposit. *See* Tex. Prop. Code § 92.109 (liability of landlord for retaining security deposit). After the conclusion of a bench trial, but before the trial court signed a final judgment, Nathanael Brown (the Greenbergs' property manager) filed what he designated as a "motion for joinder . . . and new trial." After the trial court denied Brown's motion and signed a final judgment in favor of the Freeds, Brown filed a notice of appeal.

In nine issues, Brown challenges the trial court's judgment against the Greenbergs and the trial court's order denying his "motion for joinder . . . and new trial." We conclude that Brown has failed to demonstrate that he has standing to challenge the judgment against the Greenbergs under the virtual-representation doctrine and that the trial court did not abuse its

discretion in denying his post-trial attempt to intervene. Accordingly, we dismiss this appeal in part and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, the Freeds entered into an agreement to lease residential property in Austin owned by the Greenbergs. As required by the lease, the Freeds paid $2,095 as a security deposit. Ironrock Properties, a property management company, was the Greenbergs' corporate agent in negotiating the lease and in managing the property. Brown, a broker's associate with Ironrock, was the property manager during the lease.

In August 2018, the Freeds gave written notice to Ironrock that they did not intend to renew the lease when it expired on September 30, 2018. The Freeds also provided Ironrock with a forwarding address for the purpose of returning their security deposit. In response, Ironrock asked the Freeds to notify its staff if they decided to vacate the property earlier than September 30 so that the property manager could begin the "move out inspection and process [their] security deposit." On September 18, 2018, the Freeds vacated the property and provided written notice of the surrender, as requested. Forty-three days later, on October 30, Brown sent the Freeds a check in the amount of $514.62, representing a partial return of their security deposit, along with an itemization of charges taken against the withheld portion.

The Freeds later filed suit, alleging that the Greenbergs acted in bad faith in failing to return their full security deposit and in failing to timely return the deposit or provide an itemization of deductions.[1] *See id.* §§ 92.103 (generally obligating landlord to refund security

---

[1] The Freeds originally filed their suit in justice court. After the justice court signed a judgment in favor of the Freeds, the Greenbergs appealed to the county court at law, which conducted a trial de novo and signed the judgment that Brown now seeks to appeal.

deposit to tenant within 30 days after tenant surrenders premises), 92.109(a), (b), (d) (liability of landlord who in bad faith retains security deposit or fails to provide an itemization of deductions; bad faith is presumed when landlord fails to return security deposit or provide itemization of deductions within 30 days after tenant surrenders possession). At trial, the Greenbergs called Brown as their only fact witness. In part, Brown testified about his decision to deduct certain charges from the security deposit for what he asserted were damages to the property. *See id.* § 92.109(c) (landlord has burden of proving that retention of any portion of security deposit was reasonable). As to the Freeds' allegation that the itemization of deductions was untimely, Brown testified that he could not have provided the itemization earlier because he was waiting to receive the final utility bill for the property. At the conclusion of the trial, the court announced that it would take the case under advisement. Later that same day, the court sent an e-mail to the parties' respective counsel stating that it intended to grant judgment in favor of the Freeds, including statutory and treble damages, and requesting that the Freeds' attorney submit a proposed judgment.

Two days after the trial court informed the parties of its ruling by e-mail, Brown filed a "motion for joinder of persons needed for just adjudication and new trial." The Freeds responded by objecting in writing to Brown's attempt to intervene post-trial and moving the court to render a final judgment. Approximately one week later, the court signed a final judgment awarding the Freeds $5,330.26 in actual damages and $15,199.00 in attorney's fees. The court subsequently conducted a hearing on Brown's motion and, following the hearing, signed an order denying the motion.

Brown later filed a notice of appeal and has raised nine issues in his appellant's brief. In four issues, he challenges the trial court's final judgment against the Greenbergs and, in

3

two related issues, contends he has standing to bring this challenge even though he is not a party to the judgment. In the remaining three issues, Brown challenges the trial court's decision not to allow him to intervene.

## DISCUSSION

***Brown's Standing to Challenge the Judgment***

As a preliminary matter, we first consider Brown's assertion that this Court has subject-matter jurisdiction to consider his challenges to the merits of the trial court's final judgment resolving the suit between the Freeds and the Greenbergs.

Standing is a component of subject-matter jurisdiction. *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015). Generally, only parties of record have standing to appeal a trial court's judgment. *In re Lumbermens Mut. Cas.*, 184 S.W.3d 718, 723 (Tex. 2006) (orig. proceeding); *see* Tex. R. App. P. 25.1(c) (providing that "party who seeks to alter the trial court's judgment" must file notice of appeal). Here, Brown attempted to intervene in the Freeds' suit after trial but before the trial court signed the final judgment, but the court did not allow him to do so. Consequently, Brown is not a party of record to the judgment against the Greenbergs. *See Kenneth D. Eichner, P.C. v. Dominguez*, No. 14-18-00399-CV, 2022 WL 364070 at *7 (Tex. App.—Houston [14th Dist.] Feb. 8, 2022, pet. denied) (mem. op.) (concluding that appellant whose intervention was struck was not party to judgment it sought to appeal).

Although Brown does not contend that he is a party of record, he asserts that he is nevertheless entitled to appeal the trial court's judgment under the equitable doctrine of virtual representation. *See Naylor*, 466 S.W.3d at 789 ("Although the right to appeal is generally limited to parties of record, a third party may file an appeal where the prospective appellant is

4

'deemed to be party' under the doctrine of virtual representation."). The virtual-representation doctrine provides an exception to the general rule that only parties of record may appeal. *Id.* To "intervene" on appeal as a deemed party under the virtual-representation doctrine, the nonparty must establish that (1) he is bound by the judgment; (2) he is in privity of estate, title, or interest with a party, which privity appears from the record; and (3) there is an identity of interest between him and a party to the judgment.[2] *In re Lumbermens*, 184 S.W.3d at 722. In determining whether a nonparty is a deemed party who may appeal by virtual representation, "the most important consideration is whether the appellant is bound by the judgment." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (Tex. 2003).

Brown contends he is bound by the judgment in this case because, as the Greenbergs' agent in the transactions that are the subject of the Freeds' suit, he is potentially liable to the Greenbergs to the extent they are liable to the Freeds. Brown's argument is that the Greenbergs may later sue him and Ironrock for negligence, breach of fiduciary duty, and violations of the Texas Real Estate Licensing Act, and that as a consequence of the judgment in this case he would be precluded from asserting that his actions in returning the Freeds' security deposit complied with terms of the lease and with Chapter 92 of the Property Code.

Brown's argument that he is or could be bound by the judgment below implicates the doctrine of collateral estoppel, also known as issue preclusion. The doctrine prevents the re-litigation of particular issues already resolved in a prior suit, *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.* (BB Rule 10.2.1(b), 837 S.W.2d 627, 628 (Tex. 1992), and is designed

---

[2] Even when these requirements of the doctrine are met, an appellate court must also evaluate whether other equitable considerations weigh against allowing the nonparty to intervene on appeal, such as unnecessary delay and prejudice to existing parties. *See In re Lumbermens Mut. Cas.*, 184 S.W.3d 718, 726 (Tex. 2006) (orig. proceeding).

to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments, *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). To invoke collateral estoppel, a party must establish that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in a first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action." *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (quoting *Sysco Food Servs.*, 890 S.W.2d at 801).

For two independent reasons, we conclude that Brown has not established that he would, in a hypothetical future suit brought against him by the Greenbergs, be bound by the judgment in this case.

### *(1) Brown has not established that he and the Greenbergs were "cast as adversaries" in this suit.*

As noted above, one of the essential elements for the use of collateral estoppel is that the party seeking to invoke the doctrine and the party against whom it is sought to be applied must have been "cast as adversaries in the first action," at least as to the issue in question. Section 27 of the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982). Comment *a* to section 27 states that "[t]he rule of issue preclusion is operative where the second action is between the same persons who were parties to the prior action, *and who were adversaries (see § 38) with respect to the particular issue . . . .*" *Id.* at § 27 cmt. *a* (emphasis added).

6

Section 38 of the Restatement gives further guidance as to the meaning and significance of the term "adversaries" as it relates to issue preclusion:

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly *as adversaries to each other* and which are essential to the judgment rendered.

*Id.* § 38 (Am. L. Inst. 1982) (emphasis added). Comment *a* to section 38 explains:

> *Scope and rationale*. The concept of adversarial litigation is that determination of issues is not full and fair unless a party has an opportunity to present proofs and argument specifically directed to the matters in controversy. *This opportunity necessarily exists when parties are properly aligned on opposite sides of litigation. It also exists where the claims or defenses in the pleadings put parties in an adversarial relation to each other* even though they may also be aligned together against a third party.

*Id.* at cmt. *a* (emphasis added).

Brown apparently reasons that, as the Greenbergs' property manager, he was in privity with them in the Freeds' suit and, as a result, that the Greenbergs could use collateral estoppel offensively against him in a later suit to establish his liability to them. *See Sysco*, 890 S.W.2d at 802 (explaining that collateral estoppel may be invoked when "the party against whom the doctrine is asserted was a party or in privity with a party in the first action"). But privity is relevant to an assertion of collateral estoppel only if the parties were adversaries in the prior action on the issue in question. That is, collateral estoppel applies when the party against whom collateral estoppel is asserted was, in the prior action, cast as an adversary against the party now asserting collateral estoppel or was in privity with a party that was cast as an adversary against the party now asserting collateral estoppel. Here, the absence of an adversarial

7

posture between Brown and the Greenbergs as to the relevant issue makes the question of Brown's privity immaterial.

In the present case, Brown has not established that he and the Greenbergs were adversaries in the trial, either as parties or through privity. Rather, they were on the same side. As a result, he has not established that the Greenbergs would be able to invoke collateral estoppel against him in a future suit. Because Brown has not established that he is "bound by the judgment" below, he cannot use the virtual-representation doctrine to intervene in this appeal.

### *(2) Brown has not established that an attempted offensive use of collateral estoppel by the Greenbergs would likely be allowed.*

Collateral estoppel may be used offensively or defensively. *Case Funding Network, L.P. v. Angelo-Dutch Petroleum Int'l, Inc.*, 264 S.W.3d 38, 57 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.); *see also Tankersley v. Durish*, 855 S.W.2d 241, 245 (Tex. App.—Austin 1993, writ denied) (noting that case involved "offensive use of collateral estoppel"). Defensive collateral estoppel is used by a defendant to prevent re-litigation by a plaintiff of issues previously lost against another defendant. *Johnston v. American Med. Int'l*, 36 S.W.3d 572 (Tex. App.—Tyler 2000, pet. denied). In contrast, offensive collateral estoppel is used by a plaintiff to prevent a defendant from relitigating an issue that the defendant previously litigated and lost in a suit involving another party. *Case Funding Network*, 264 S.W.3d at 57; *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 5–7 (Tex. 1986).

Brown asserts that in this suit by the Freeds he was in privity with the Greenbergs as their property manager and agent and that in a subsequent suit the Greenbergs may use collateral estoppel offensively to attempt to establish his liability to them. But even if the

elements of collateral estoppel, including privity, would otherwise be satisfied in any future suit brought by the Greenbergs against Brown, we disagree that Brown has established that an offensive use of collateral estoppel would necessarily apply in such a subsequent suit.

Offensive use of collateral estoppel does not promote judicial economy in the same manner that defensive use does. *Parklane Hosiery v. Shore*, 439 U.S. 322, 329 (1979). Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues and gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. *Id.* at 329–30. On the other hand, offensive use of collateral estoppel "creates precisely the opposite incentive" and gives a plaintiff an incentive to adopt a "wait and see" approach, in the hope that the first action will result in a favorable judgment. *Id.* at 330. For this reason, the U.S. Supreme Court in *Parklane Hosiery* recognized that a trial court may decline to apply offensive collateral estoppel, even in cases where the traditional elements of collateral estoppel are satisfied. *Id.* at 330. While a trial court is given broad discretion to apply collateral estoppel offensively without strict mutuality of parties, the general rule is that "in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331; *Scurlock Oil*, 724 S.W.2d at 5–7 (noting that Texas courts should consider "fairness factors as outlined in *Parklane Hosiery*" in determining applicability of offensive use of collateral estoppel); *see also Richard v. Ayala*, No. 01-14-00354-CV, 2015 WL 6931497 at *6 (Tex. App.—Houston [1st Dist.] November 10, 2015, no pet.) (mem. op.) (concluding trial court did not abuse its discretion in refusing to allow offensive use of collateral estoppel because it would be unfair under facts presented (citing *Parklane Hosiery*, 439 U.S. at 331)).

9

In the proceedings underlying this appeal, the Freeds' claims against the Greenbergs were based on transactions conducted by Brown as their property manager. Under Rule 38 of the Texas Rules of Civil Procedure, the Greenbergs could have added Brown as a third-party defendant and pursued their claims against him as third-party plaintiffs, but they did not. *See* Tex. R. Civ. P. 38(a) (providing that defendant may bring in third-party defendant "who is or who may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him"). Thus, in the absence of countervailing circumstances not apparent from the record before us, in order to establish Brown's liability in a subsequent suit, the Greenbergs would have to independently show that Brown wrongfully withheld the Freeds' security deposit.

Based on the present record, we cannot conclude that Brown has established that he is bound by the judgment that he seeks to appeal. Consequently, he cannot satisfy the first part of the three-part test for virtual representation. *See In re Lumbermens*, 184 S.W.3d at 722. Because he is not a party of record and has not established that he is entitled to intervene under the doctrine of virtual representation, Brown lacks standing to appeal the merits of the Freeds' judgment against the Greenbergs. *See State v. Naylor*, 330 S.W.3d 434, 444 (Tex. App.—Austin 2011), *aff'd*, 466 S.W.3d 783 (Tex. 2015) (dismissing appeal for want of jurisdiction because nonparty could not be considered to be deemed party by virtual representation). We overrule Brown's first and second issues, asserting that he is a deemed party by virtual representation. We therefore lack jurisdiction to consider issues five, six, seven, and eight, in which Brown challenges the merits of the trial court's judgment.

*Denial of Brown's Motion to Join and for a New Trial*

Although Brown lacks standing to challenge the merits of the trial court's judgment against the Greenbergs, we may consider his complaint that the trial court abused its discretion in denying his post-trial attempt to intervene and request for a new trial.[3] *See Kenneth D. Eichner, P.C.*, 2022 WL 364070 at *7 (noting that issue of whether appellant was "a party" for purpose of perfecting appeal of trial court's decision to strike intervention, which merged into the final judgment, was separate from whether appellant has standing to challenge judgment under virtual-representation doctrine); *Smith v. City of Garland*, 523 S.W.3d 234, 239 (Tex. App.—Dallas 2017, no pet.) ("After final judgment, an unsuccessful intervenor may complain on appeal of the striking of his intervention plea.").

A party with a justiciable interest in a pending lawsuit may intervene as a matter of right. *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019). Rule 60 of the Texas Rules of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. When a motion to strike is filed, the burden shifts to the intervenor to show a justiciable interest in the lawsuit, which may be legal or equitable in nature. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982). An intervenor has a justiciable interest in a lawsuit when his interest will be

---

[3] Although Brown styled his pleading in the trial court as a "motion for joinder," the term "joinder" generally refers to the addition of parties to a lawsuit by those who are already in the suit. *See In re Union Carbide*, 273 S.W.3d 152, 155–56 (Tex. 2008) (orig. proceeding) (explaining that joinder and intervention are distinct and that "[p]ermissive joinder relates to 'proper parties to an action who may have been joined or omitted at the pleader's election'"). In contrast, "intervention" generally refers to an attempt by a nonparty to insert himself into a lawsuit. *See id.* at 156 (noting that "interventions by uninvited participants have potential for disrupting pending suits"); Tex. R. Civ. P. 60. Because Brown attempted to insert himself into an ongoing suit, we will treat his motion as a plea in intervention on the ground that his participation was necessary for a full adjudication of the case, *see* Tex. R. Civ. P. 39, and we will treat the Freeds' objection to the motion as a motion to strike the intervention.

affected by the litigation. *In re Estate of Webb*, 266 S.W.3d 544, 548 (Tex. App.—Fort Worth 2008, pet. denied).

Even if a justiciable interest exists, however, the trial court still has broad discretion to determine whether the plea in intervention should be struck. *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 713 (Tex. 2021). A trial court abuses its discretion in striking a petition to intervene if (1) the intervenor could have brought the same action, or any part thereof, in his own name (or if the action had been filed against the intervenor, all or part of the recovery could have been defeated by the intervenor); (2) the intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to protect the intervenor's interest. *Guarantee Fed. Sav. Bank v. Horseshoe Oper. Co.*, 793 S.W.2d 652, 657 (Tex. 1990). Because a trial court has broad discretion in determining whether to strike an intervention, a significant delay in filing a petition in intervention may also qualify as "sufficient cause" to strike an intervention. *Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 874 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining that petition in intervention may be considered "untimely," even if before final judgment, when "filed so late that it would delay the proceeding or unjustifiably complicate it").

On appeal, Brown argues that the trial court abused its discretion in denying his motion to join in the suit because, in his view, he established that his "joinder" was necessary under Rule 39 of the Rules of Civil Procedure. *See* Tex. R. Civ. P. 39 ("Joinder of Persons Needed for Just Adjudication"). Construing his argument liberally, Brown asserts that the record shows he has an interest relating to the subject matter of the lawsuit and that his participation in the suit is necessary to protect that interest. *See id*. According to Brown, he "may be impaired or impeded to protect his interest as the agent of the Greenbergs who is liable for his actions

12

under common law principles of the agent-principal relationship, duties and obligations provided by the Texas Real Estate Licensing Act and the Texas Real Estate Commission's rules and regulations, and contractually liable under his property management agreement with the Greenbergs."

Brown's argument as to his justiciable interest (like his virtual-representation argument) assumes that he will be estopped from defending his actions in a subsequent suit by the Greenbergs. As we previously discussed, Brown's assumption that he is necessarily "bound by the judgment" is not correct. Moreover, Brown testified at trial about the transaction that is the basis of his potential liability, and he does not explain what defenses, if any, he would have asserted to "protect his interest" had the trial court permitted his intervention and ordered a new trial. In short, we cannot conclude that the trial court's denial of Brown's motion to intervene in the lawsuit, which was filed after trial and more than twenty-eight months after the Freeds initiated suit against the Greenbergs, constituted an abuse of discretion. We overrule issues three, four, and nine.

**CONCLUSION**

We dismiss for want of jurisdiction Brown's attempted appeal from the portion of the trial court's judgment resolving the merits of the Freeds' suit against the Greenbergs. We affirm that portion of the trial court's judgment denying Brown's "motion for joinder of persons needed for just adjudication and new trial."

13

_____

J. Woodfin Jones, Justice

Before Justices Baker, Theofanis, Jones[*]

Affirmed in Part; Dismissed in Part

Filed:   May 10, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).